**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

J.C. and B.C., on behalf of D.C.,

                             Plaintiffs,

             -against-

New York City Department of Education,

                             Defendant.

                                  **COMPLAINT**

                          **07 CV 10960 (JGK)(DF)**

-----------------------------------------------------------------

      Plaintiffs J.C. and B.C., on behalf of D.C., by their attorneys, Mayerson & Associates, as and for their Complaint against defendant, the New York City Department of Education ("NYCDOE"), allege the following:

      1.  This action seeks to assess, adjudicate, and fix the amount of plaintiffs' entitlement to statutorily recoverable attorneys' fees and the related costs and disbursements associated with having achieved "substantially prevailing party status" at successive administrative due process proceedings involving the provision of a free and appropriate public education ("FAPE") to plaintiff D.C., for purposes of the 2003-2004, 2005-2006, and 2006-2007 school years.  This action is being brought pursuant to the provisions of 20 U.S.C. § 1400 *et. seq.*, more commonly known as the Individuals with Disabilities Education Improvement Act ("IDEIA"), and in particular, 20 U.S.C. §§ 1415(i)(3)(A)-(G).

      2.  Pursuant to 20 U.S.C. §§ 1415(i)(3)(A)-(G), M.S. should be awarded attorneys' fees and costs as the substantially prevailing party in Case No. 51771 (2003-2004), Case No. 102140 (2005-2006), and Case No. 106279 (2006-2007) conducted through defendant's Impartial Hearing Office.  Although not required by law, on December 14, 2004, plaintiffs filed a Notice

of Claim with the Office of the Comptroller with regards to the 2003-2004 school year claim. Defendant kept the 2003-2004 matter open, and even to date, never took a position one way or the other as to whether plaintiffs' attorneys' fees claim would be paid or, if so, in what amount.

3. This Court has jurisdiction pursuant to 20 U.S.C. §§ 1415(i)(3)(A)-(G) and <u>A.R. v. N.Y. City Dept. of Educ.</u>, 407 F.3d 65 (2d Cir. 2005), without regard to the amount in controversy.

4. Venue properly lies in this district as plaintiffs reside and defendant has offices located in this district.

5. D.C., the daughter of plaintiffs J.C. and B.C., is a minor child who has been diagnosed with an autism spectrum disorder. D.C. is, and at all relevant times has been, a student within the NYCDOE entitled to all the rights and procedural safeguards mandated by applicable law and statutes, including but not limited to the IDEIA and the New York State Education Law.

6. Plaintiffs J.C. and B.C., the parents of D.C., at all relevant times have resided within this district and currently reside at 303 East 83rd Street, New York, New York 10028.

7. Plaintiffs J.C. and B.C., and their daughter D.C., are not expressly named within this Complaint because of the privacy guarantees contained in the IDEIA and 20 U.S.C. § 1232(g), more commonly referred to as the Family Educational Rights and Privacy Act.

8. Defendant is a local educational agency that continues to have the responsibility to provide a free and appropriate public education (hereinafter "FAPE") to D.C. in her least restrictive environment pursuant to D.C.'s statutory rights as a student with a disability.

<u>**The 2003-2004 School Year claim**</u>

9. On or about August 26, 2003, plaintiffs initiated an administrative, due process proceeding (Case No. 51771) against the defendant, in order to secure reimbursement and other

relief based upon the NYCDOE's failure to provide D.C. with a FAPE for purposes of the 2003-2004 school year.

10. Attorney Amanda L. Oren and other Mayerson & Associates staff represented plaintiffs throughout this proceeding (Case No. 51771).

11. By Decision dated April 28, 2004, plaintiffs secured substantial relief and thus achieved status as a substantially prevailing party in Case No. 51771.[1] Defendant never appealed from the underlying administrative decision, which thus became final and non-appealable.

12. On or about December 14, 2004, although not required by law or statute, plaintiffs' counsel filed a Notice of Claim with the Office of the Comptroller as a result of prevailing in Case No. 51771.[2]

13. Upon information and belief, even to this very day, defendant thereafter never took a position to pay or refuse to pay plaintiffs' claim with respect to Case No. 51771.

## The 2005-2006 School Year claim

14. On or about September 22, 2005, plaintiffs initiated an administrative, due process proceeding (Case No. 102140) against the defendant, in order to secure reimbursement and other relief based upon the NYCDOE's failure to provide D.C. with a FAPE for purposes of the 2005-2006 school year.

15. Following a period of preparation and evidentiary disclosures, an evidentiary hearing followed. Pursuant to the United States Supreme Court's decision in Schaffer v. Weast, 546 U.S. 49 (2005), plaintiff assumed and bore the burden of persuasion on all three prongs of the Burlington/Carter test for relief. Plaintiffs' met that heavy burden.

---

[1] A copy of the decision is annexed hereto as Exhibit A.
[2] A copy of the notice of claim is annexed hereto as Exhibit B.

16. Attorney Christina D. Thivierge and other Mayerson & Associates functionaries represented plaintiffs throughout this proceeding (Case No. 102140).

17. By Decision dated April 20, 2006, plaintiffs secured substantial relief and thus achieved status as a substantially prevailing party in Case No. 102140.[3]  Defendant never appealed from the underlying administrative decision, which thus became final and non-appealable.

## The 2006-2007 School Year claim

18. On or about August 31, 2006 plaintiffs initiated an administrative due process proceeding (Case No. 106297) against the defendant, in order to secure reimbursement and prospective funding relief, as well as other relief, based upon the NYCDOE's continued failure to provide D.C. with a FAPE for the 2006-2007 school year.

19. Following a period of preparation and evidentiary disclosures, an evidentiary hearing followed.  Pursuant to the United States Supreme Court's decision in Schaffer v. Weast, 546 U.S. 49 (2005), plaintiff assumed and bore the burden of persuasion on all three prongs of the Burlington/Carter test for relief.  Plaintiffs' met that heavy burden.

20. By "Findings of Fact and Decision" dated July 26, 2007, Impartial Hearing Officer Robert Briglio rendered an award in favor of D.C., in Case No. 106297, establishing plaintiffs as substantially prevailing parties in that latest administrative due process proceeding.[4]  Defendant never appealed from the underlying administrative decision, which became final and non-appealable.

---

[3] A copy of the decision is annexed hereto as Exhibit C.
[4] A copy of the decision is annexed hereto as Exhibit D.

## Conclusion

21. Due to plaintiffs' status as substantially prevailing parties in successive proceedings and actions covering the 2003-2004, 2005-2006, and 2006-2007 school years, they are entitled to attorneys' fees and costs in the administrative proceedings at the IHO level.

22. The fees and costs that were recorded by plaintiffs' counsel are reasonable and appropriate and plaintiffs' counsel has recognized special expertise in special education matters in general, and autism spectrum matters in particular. The Second Circuit and other courts have previously recognized plaintiffs' counsel's special expertise and have held that IDEA-based fees at the administrative level are to be treated no differently than attorneys' fees at the federal level.

23. Necessary duties involved with preparing D.C.'s case for the multiple administrative hearings at the IHO level included, but were not limited to: (a) significant file review and analysis of IEP's assessments, evaluations and progress reports; (b) communications with plaintiffs and other potential witnesses; (c) drafting, writing and filing detailed impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to D.C.'s claims; (e) scheduling and preparing witnesses to testify at the hearing; (f) developing an effective case presentation; (g) development of post-hearing submissions; and (h) commencing and prosecuting this action, including litigating any fee application that may be made, as well as any appeals that might be taken.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should: (a) fix and award plaintiffs attorneys' fees and related costs and disbursements from the IDEIA administrative due process matters, in an amount to be set by this Court; (b) award plaintiffs their attorneys' fees and related costs and disbursements of this action, including the anticipated fee application, in an amount to

be set by this Court; and (c) award plaintiffs such other, further and different relief as the Court

deems appropriate under the circumstances.


Dated: December 3, 2007
      New York, New York                Gary S. Mayerson (GSM8413)
                                       Mayerson & Associates
                                       Attorneys for Plaintiff
                                       330 West 38th Street, Suite 600
                                       New York, New York 10018
                                       (212) 265-7200
                                       (212) 265-1735 (fax)

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 51771 |
| NYS Case Identifier Number: | 5610 |
| Student's Name: | Denna Chachkes |
| Date of Birth: | August 13, 1999 |
| District: | 2 |
| Hearing Requested By: | Parent |
| Date of Hearing: | April 1, 2004 |
| Hearing Officer: | Alison Berry, Esq. |

Hearing Officer's Findings of Fact and Decision                    1

Case No. 51771

---

## NAMES AND TITLES OF PERSONS WHO APPEARED

| | | |
|---|---|---|
| Amanda Oren | Attorney | Parent |
| Bonnie Chachkes | Mother | |
| Jacob Chachkes | Father | |
| Ivy Feldman (via telephone) | Educational Director, McCarton School | Parent |
| Carolyn Chin | Applied Behavioral Analysis | Parent |
| Barbara Advocate | Chairperson Designee, Supervisor Assigned, CSE, District 2 | Department of Education |
| Peggy Winkelman | Preschool Administrator, CSE, District 2 | Department of Education |

Hearing Officer's Findings of Fact and Decision                                        2

Case No. 51771

_____

The matter of Denna C. came on for hearing before me on April 1, 2004, pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §1415(f)(1). I was appointed as hearing officer as of October 23, 2004. The hearing was convened at the request of the parent which was received on August 26, 2003. Included in the record are the names of the persons who appeared and a list of the documents received in evidence.

## POSITIONS OF THE PARTIES

The Department of Education last recommended that Denna be classified as a Preschool Student with a Disability, receive special education itinerant teacher (SEIT) services for 25 hours per week, speech and language therapy twice weekly individually and occupational therapy twice weekly individually. It also recommended that she attend a 12-month program. (Exh. A)

Denna's parents have unilaterally enrolled her at the McCarton School, a private school in Manhattan, and are requesting that the Department of Education reimburse them for an at-home applied behavioral analysis (ABA) program for the 2003-2004 school year.

## THE DEPARTMENT'S CASE

The Department of Education's case was presented by Barbara Advocate, Supervisor Assigned, and in the testimony of Peggy Winkelman, Preschool Administrator.

Ms. Advocate stated that due to procedural deficiencies in the last Individualized Education Program (IEP), the Department of Education was not contesting the private program at the McCarton School that the parents had selected. Evaluations this year will determine whether any changes should be made to this program. Accordingly, she has recommended a Stipulation of Settlement for the tuition at the McCarton School to the Department of Education. The recommended Stipulation includes the cost of the related services Denna receives at McCarton. The parents are waiting for the Department of Education to approve the recommended settlement. The Department of Educaiton is, however, contesting the additional 20-25 hours of ABA services which Denna receives at home as well as additional speech and occupational therapy that she also receives at home

08/10/2004 FRI 10:52 FAX 212 265 1735 MAYERSON AND ASSOCIATES    ☒ 008/014

Hearing Officer's Findings of Fact and Decision                                3

Case No. 51771

Ms. Advocate noted that although the Department of Education previously recommended that Denna receive 25 hours of ABA therapy, it did so at a time when Denna would not be receiving such services in school. (Tr. at 7-10, 27, 42)

Ms. Winkelman testified the IEP that was generated on May 1, 2003 recommended SEIT services for 25 hours per week as well as speech and language and occupational therapy. At that time, the Preschool Administrator contacted an agency to provide the SEIT service who identified a very highly qualified person to do so. However, the agency did not hear from the parents despite trying to reach them over the summer. Then, apparently in September, the parents refused the service. At that point, the agency closed the case. (Tr. at 11-12) Ms. Winkelman conceded that it is not a common practice to have one provider providing 25 hours or service in an ABA program for a child. (Tr. at 15)

## THE PARENTS' CASE

The Parents' case was presented in the testimony of Denna's parents, Jacob and Bonnie C., Ivy Feldman, Educational Director of the McCarton School and Carolyn Chiu, Therapist, as well as in various documents.

Mr. C. testified that in the beginning of the summer of 2003, he was contacted by an ABA provider from Shema Kelainu who was wonderful and whom they liked very much. However, since the family's prior settlement agreement with the Department of Education extended through August, this new provider could not have started working until September. She could not wait for two months and so she was assigned to another student. The agency told the family that there was no other provider available for September. (Tr. at 16-17)

Mr. C. further testified that the ABA providers who they have engaged charge hourly rates ranging from $50.00 to $145.00 depending on their level of experience. Denna is now getting 25 hours of ABA services. The tuition at the McCarton School is $65,000.00 (Tr. at 18) Denna also gets additional speech therapy twice weekly and occupational therapy three times weekly outside of school. She receives additional occupational therapy due to her low muscle tone that is often associated with children who have Autism. In speech, she needs help in generalizing from school to home. Denna receives additional speech and occupational therapy as well as ABA therapy after school

Hearing Officer's Findings of Fact and Decision                                  4

Case No. 51771

_____

at home from 3:00 p.m. to 7:00 p.m. Sometimes ABA therapy is given on Saturday. The hourly rate for these additional services ranges from $120.00 to $145.00. (Tr. at 20-23)

Mr. C. also described some of Denna's functioning. She has particular difficulty with "downtime" and will do dangerous things to herself, such as using a knife to cut things and flooding the house with water from the bathtub. She does not know how to play appropriately with her brothers and sisters. She needs structure and organization and to be taught how to utilize "downtime." (Tr. at 24, 26)

Denna's mother, Ms. C., testified that Denna was first diagnosed with Autism when she was about 15 months old. This is her second year at the McCarton School. Some of the ABA therapists she has engaged come from the McCarton School and the others she has found on her own. The McCarton School also gives her parent training every Wednesday for 45 minutes. (Tr. at 29-30)

Ms. C. also described some of Denna's behavior and level of functioning. When she does not want to do something, she frequently shoves her fingers down her throat and vomits. This is a behavior to which she has regressed. She can also jump on the trampoline for three hours repeating the same nonsensical words. When she does not get her way, she bites and she may bite her brothers and sisters. Her younger sister used to be frightened of her. Denna's ABA therapy includes a food program, a bathing program, and things such as learning to sit in a chair, how to use a spoon, potty training, etc. She is basically being introduced to becoming a human being. (Tr. at 31-34)

Ms. C. also described the progress Denna has made. Denna is now speaking although she never spoke at all last year since she has no tongue development. She is learning how to sit still; she is learning how to play with her sister; she can sit at the table; her receptive language has improved tremendously. However, after any lapse in services, her behavior regresses. (Tr. at 34-37)

Dr. Feldman, Educational Director of the McCarton School, testified that she is responsible for the behavior treatment plans for all the children in the school. Denna is in a class with three other children all of whom have home ABA programs. In the class, there are three ABA instructors and one speech and language therapist.

At school, Denna presents with a great deal of behaviors that interfere with her ability to learn. When she started in the school, from September to December, they had a

Hearing Officer's Findings of Fact and Decision                                    5

Case No. 51771

_____

very time teaching her because she was tantruming so frequently.  Currently, Denna
exhibits a great deal of perseverative behaviors but her tantrums have become much
shorter and she is more easily re-directed.  However, as soon as one perseverative
behavior is blocked, Denna develops another behavior.  If Denna is allowed to engage in
these behaviors and practice them outside of school, it increases the resilience of the
behavior.  Dr. Feldman explained that Denna's behaviors make generalization very
difficult because she learns in a sequence and learns something only in a particular
environment.  When she is brought to a different environment, she has different rules.  In
order for Denna not to lose skills and not engage in perseverative or dangerous behaviors,
Dr. Feldman expressed her opinion that she needs 25 hours of therapy outside of school,
including the weekends.  She emphasized that a different behavior plan at home than at
school would cause the negative behavior to persist because it would be instrumentally
reinforced.  (Tr. at 44-52, 59)  Dr. Feldman also noted regression in Denna's behavior
after a lapse in her services caused, for example, by vacations or absences by one of her
therapists.  When she regresses, Denna's body becomes disinhibited.  That is, it becomes
very difficult for her to control her body.  (Tr. at 60)  Denna's body also becomes
disinhibited and is unable to focus when she is in an unstructured situation at home.
(Tr. at 66)

    Finally, Carolyn Chiu, one of Denna's ABA therapists in the classroom who also
provides therapy at Denna's home and supervises the home team, testified that in her
opinion, having more than one therapist allows Denna to generalize her skills better.  (Tr.
at 75, 78, 88)

## DISCUSSION

    The Department of Education may be required to pay for educational services
obtained for a child by the child's parents if the services offered by the Department of
Education are inadequate or inappropriate, the services selected by the parents are
appropriate, and equitable considerations support the parents' claim.  School Committee
of Burlington v. Department of Education of Massachusetts, 471 U.S. 359 [1985]).  The
fact that the facility selected by the parents to provide special education services to the
child is not approved as a school for children with disabilities by the State Education
Department, as is the case here, is not dispositive of the parents' claim for tuition

09/10/2004 FRI 10:52 FAX 212 265 1735 MAYERSON AND ASSOCIATES                                    ☒011/014

Hearing Officer's Findings of Fact and Decision                                                6

Case No. 51771

reimbursement. (Florence County School District Four et. al. v. Carter by Carter, 114 S. Ct. 361 [1993]). The Department of Education bears the burden of demonstrating the appropriateness of the program recommended by the Committee on Special Education (CSE).

In this case, the Department of Education did not dispute the appropriateness of the private school the parents unilaterally selected and its representative at the hearing has recommended approval of reimbursement of the tuition. Therefore, based on the representations made at the hearing, the Department of Education will be ordered to reimburse Denna's parents for the tuition at the McCarton School.

Regarding the provision of ABA therapy at home which the Department of Education has contested its appropriateness, the Department of Education did not present evidence that it had offered a program that was adequate to address the child's needs. I find that Denna's parents met their burden of showing the suitability of the home-based program. The evidence adduced showed that Denna has severe autism and so requires a structured program for most of the day. She was shown to benefit from the home-based program which is administered by several different therapists by having the skills she learns at school generalize to the home environment and to different people with whom she interacts. The Department of Education did not present any evidence to demonstrate that the child would derive a similar benefit from having ABA therapy administered only during school hours. Nor did the Department of Education present evidence to show that the child would derive the same benefit from a fewer number of hours of ABA therapy at home. There are no mitigating factors against the parents' request for payment for these services.

I find, however, that the parents presented insufficient evidence to demonstrate that speech and language and occupational therapy, in addition to what the Department of Education has recommended, is required in order for the child to derive an educational benefit. The evidence was that Denna receives these therapies during the school day as an integral part of her program from which she is benefiting. Although additional hours of such therapies may be optimal for the child, the Department of Education is not obliged to provide an optimal program, only that which is appropriate educationally.

09/10/2004 FRI 10:52 FAX 212 265 1735 MAYERSON AND ASSOCIATES                                    ☑012/014

Hearing Officer's Findings of Fact and Decision                                                         7

Case No. 51771

_____

For all of these reasons, it is ordered as follows:

1. The Department of Education shall reimburse the parents of Denna C. for the cost of tuition at the McCarton School for the 2003-2004 school year upon presentation of proof of payment. Payment shall be made within 30 days of the parents' submission of proof of payment.

2. The Department of Education shall reimburse the parents of Denna C. for the cost of home-based ABA therapy for a maximum of 25 hours per week during the 2003-2004 school year for a twelve-month program. Payment shall be made within 30 days of the parents' submission of proof of payment.

3. Denna C. shall receive speech and language therapy twice weekly individually and Occupational Therapy twice weekly individually as specified on her IEP

4. This Decision and Order shall supersede the terms of any recommended settlement that the Department of Education might subsequently approve.

Dated: April 28, 2004

ALISON BERRY, ESQ.
Impartial Hearing Officer

AB:nn


**PLEASE TAKE NOTICE**

Within 30 days of the receipt of this decision, the parent and/or Board of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act. Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

08/10/2004 FRI 10:02 FAX 212 285 1735 MAYERSON AND ASSOCIATES                      013/014

Hearing Officer's Findings of Fact and Decision                                      8

Case No. 51771

## DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| A. | IEP, 5/1/03, 15 pp. | Parent |
| B. | Demand for Due Process Hearing, 8/26/03, | Parent |
| C. | McCarton School Graphs, 9/03/03, 57 pp. | Parent |
| D. | Educational Progress Report, 10/15/03, 4 pp. | Parent |
| E. | Educational Progress Report, 3/12/04, 4 pp. | Parent |
| F. | McCarton School Graphs, 9/03-3/04, 44 pp. | Parent |
| G. | Home Programming, 9/03-3/04, 19 pp. | Parent |
| H. | Progress Report/Home Therapy Program, 3/22/04, 3 pp. | Parent |

# Mayerson & Associates

330 W. 38th Street, Suite 600
New York, New York 10018

_____

**mayerslaw.com**

GARY S. MAYERSON  ♦ *
CHRISTINA D. THIVIERGE
AMANDA L. OREN * ∞

\* ALSO ADMITTED IN NEW JERSEY
∞ ALSO ADMITTED IN CONNECTICUT
♦ ALSO ADMITTED IN FLORIDA

TEL: 212.265.7200
FAX: 212.265.1735
E-MAIL: GARY@MAYERSLAW.COM

December 15, 2004

**<u>VIA FEDERAL EXPRESS</u>**

Office of the Comptroller
The City of New York
Bureau of Law & Adjustment
1 Centre Street
New York, New York 10007-2341

**Re:**     **<u>Notice of Claim – Attorneys' Fees</u>**

To Whom It May Concern:

Please find the enclosed Notice of Claim for the following matters:

B.C. and J.C. on behalf of D.C. v. New York City Department of Education Region 9/District 2(Case No. 51771)

Please issue us a claim number so that this family's claim may proceed. Do not hesitate to contact this office if you have any questions.

Sincerely,

*Anna Boksenbaum*

Anna Boksenbaum

```
                                              x
In the matter of the Claim of B.C. and J.C.  x
On behalf of D.C                              x          NOTICE OF CLAIM
                                              x          Case Number 51771
                                              x
                                              x
                      Against                 x
                                              x
                                              x
New York City Department of Education,        x
    Region 9/District 2                       x
```

## TO: COMPTROLLER OF THE CITY OF NEW YORK

PLEASE TAKE NOTICE that the undersigned claimant hereby makes claim and demand against the City of New York as follows:

**1.     The name and post office address of each claimant and claimant's attorney is:**

> Gary S. Mayerson, Esq.
> MAYERSON & ASSOCIATES
> Attorneys for Claimant
> 330 West 38th Street, Suite 600
> New York, NY 10018
> (212) 265-7200

**2.     The nature of the claim:**

Attorneys' fees related to an Impartial Hearing, where claimant, the parent and natural guardians, of a child with an eligible disability, prevailed.

**3.     The time when, the place where and the manner in which the claim arose:**

The request for an Impartial Hearing was made on or about August 26, 2003 and the hearing was conducted on or about April 1, 2004. The Hearing Officer issued a Finding of Fact and Order in favor of the parents of the subject child received on or about April 28, 2004.

**4.     The items of damage or injuries claimed are:**

**TOTAL AMOUNT CLAIMED:        $4,668.75**

The undersigned claimant therefore presents this claim for the adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by the law from the date of presentation to you, the claimant intends to commence on this claim.

Date: December 15, 2004

_____
Gary S. Mayerson

_____
Gary S. Mayerson, Esq.
MAYERSON & ASSOCIATES
Attorneys for Claimant
330 West 38th Street, Suite 600
New York, NY 10018
(212) 265-7200

## AFFIRMATION OF VERIFICATION

STATE OF NEW YORK       )
                        : ss.:
COUNTY OF NEW YORK  )

        GARY S. MAYERSON affirms under the penalty of perjury and says, that he is the attorney for the Claimant in this proceeding; that he has read the foregoing Notice of Claim and knows the contents thereof, that the same is true to his own knowledge and belief, and that as to those matters, he believes is true. This verification is being made by Gary S. Mayerson because he has possession of and knowledge of the time-detail records which are the basis of the claim.

_____
Gary S. Mayerson

Dated:  New York, NY
this   15  day of  Dec   , 2004

_____
*Plus time charges, if any in connection with this claim, any appeals or other enforcement proceedings where Claimant is the prevailing party.

# FINDINGS OF FACT AND DECISION

Case Number:                       102140

NYS Case Identifier Number:   16931

Student's Name:                    Deena Chachkes

Date of Birth:                     August 13, 1999

District:                          2

Hearing Requested By:             Parent

Dates of Hearing:                  February 27, 2006
                                   March 3, 2006

Hearing Officer:                   Veronica C. Odom, Esq.

Case No.  102140

NAMES AND TITLES OF PERSONS WHO APPEARED FEBRUARY 27, 2006

| | | |
|---|---|---|
| Christina D. Thivierge | Attorney, Mayerson & Associates | Parent |
| Bonnie Chachkes | Mother | |
| Jacob Chachkes | Father | |
| Ivy Feldman (via telephone) | Director, McCarton School | Parent |
| Nilofer Naqvi | Chairperson Designee, CSE, Region 9 | Department of Education |
| Dewey Aleem | School Psychologist, Region 9 | Department of Education |
| Camilla Swift (via telephone) | Head Teacher, P.S. 266 at P.S. 76 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED MARCH 3, 2006

| | | |
|---|---|---|
| Christina D. Thivierge | Attorney, Mayerson & Associates | Parent |
| Bonnie Chachkes | Mother | |
| Jacob Chachkes | Father | |
| Shreya Patel (via telephone) | ABA Home Supervisor, McCarton School | Parent |
| Marva Peart (via telephone) | Teacher, McCarton School | Parent |
| Leslie Weinberg (via telephone) | Occupational Therapist, McCarton School | Parent |
| Laura Prestia (via telephone) | Speech Pathologist, McCarton School | Parent |
| Nilofer Naqvi | Chairperson Designee, CSE, Region 9 | Department of Education |

Case No.  102140

_____

On September 20, 2005, a request for an impartial hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(f)(1), was filed by Mayerson & Associates on behalf of Deena C.

I was appointed as hearing officer on September 22, 2005, and a motion to schedule was heard on September 28th and a hearing was scheduled for November 7th. On that date this hearing officer granted a motion to adjourn to November 28th.  On or about that date this hearing officer adjourned this matter on consent to February 27, 2006.

This matter was heard on February 27th and was scheduled on consent of both parties to continue on March 3rd.  The compliance date was extended at the request of both parties.  The record close date was April 3, 2006.

The parent's attorney requested this hearing seeking to have this impartial hearing officer find that:  (1) the Individualized Education Program ("IEP") for the 2005-2006 school year declared substantively and procedurally flawed; (2) the Committee on Special Education ("CSE") failed to offer Deena an appropriate program and or placement; (3) the parent is entitled to reimbursement for the McCarton School tuition and costs; (4) the parent is entitled to reimbursement for twenty-five (25) hours of extended day Applied Behavioral Analysis ("ABA") services, two (2) hours of extended day speech services and two (2) hours of extended day occupational therapy services.

A list of the witnesses who attended this hearing and the documentary evidence submitted is appended to this decision.

## BACKGROUND

Deena is a 6-year old female classified as autistic.  The CSE Review Team met on May 18, 2005 and developed an IEP for the 2005-2006 school year.   The CSE recommended a special class in a special school with a student teacher ratio of 6:1:1 (Exh. 1, 7).

A Final Notice of Recommendation dated August 8, 2005, offered the student a placement at 226 at P.S. 76 (Exh. 5).

Case No. 102140

---

## PENDENCY

Christina Thivierge contended that the last agreed upon placement was determined by Hearing Officer Alison Berry in her April 28, 2004 decision (Tr. at 101; Exh. PP).

Ms. Naqvi stated that the Department of Education ("DOE") did not object (Tr. at 114-115).

## DEPARTMENT OF EDUCATION'S POSITION

Nilofer Naqvi, represented the DOE's position that Deena was offered a free appropriate public education ("FAPE") for the academic year of 2005-2006.

Ms. Naqvi contended that the DOE established that the school year commences on July 1st through June 30th, and therefore the reimbursement period begins July 2nd and ends June 30th (Tr. at 116).

## PARENT'S POSITION

Ms. Thivierge, Esq. of Mayerson & Associates asserted that the IEP prepared by the CSE Review Team was procedurally and substantively flawed, and that the parent should be reimbursed for tuition she paid for the 2005-2006 school year at the McCarton School.

Ms. Thivierge contended that the DOE failed to have a general education teacher present at the CSE meeting, and a special education teacher who represents the district who had also had knowledge of the DOE (Tr. at 16).

Ms. Thivierge alleged that at the May 18th CSE meeting the district came with a completely typed IEP which denied Deena's parents an opportunity to be an equal member of the IEP team (Tr. at 16). Ms. Thivierge alleged that Deena's parents received a Final Notice of Recommendation on August 27th which was dated August 8th (Tr. at 17).

Ms. Thivierge requested that this impartial hearing officer issue an interim order of pendency awarding tuition and costs of the McCarton School for a 12-month school year, 25 hours a week of ABA therapy at home, 2 hours per week of speech and language services on an extended day basis, and 2 hours per week of occupational therapy on an extended day basis (Tr. at 15).

_____

## HEARING

## PARENT'S CASE

Ms. Thivierge presented Ivy Feldman, director at the McCarton School, as a witness. She testified that the school has 23 children in attendance. They attend class from 8:45 a.m. to 2:45 pm. The students receive one-on-one services the entire day. She testified that students receive one (1) hour of speech and language services, 45 minutes of individual occupational therapy, and the remainder of the time is spent in ABA (Tr. at 70-71). She testified that there is a speech therapist trained in behavior intervention in Deena's class at all times (Tr. at 85).

Dr. Feldman testified that Deena moves between small group activities and individual activities while working towards learning in a group (Tr. at 71). She testified that McCarton uses the ABLLE curriculum, which is a verbal behavior curriculum, and develops an IEP for each student (Tr. at 72).

Dr. Feldman stated that Deena has a behavior plan because her behavior was so severe in the beginning, but has recently been changing quickly (Tr. at 73). She testified that Deena had a history of preseverative and tantrum behaviors. Dr. Feldman testified further that Deena's tantrum behavior used to last the entire day (Tr. at 73). Dr. Feldman testified that Deena's behavior plan included that she not be allowed to touch other children because she was engaging in aggressive behavior and was distracted by the other students (Tr. at 74).

Dr. Feldman stated that Deena initially had trouble deviating from a schedule, but has made progress and become more flexible and now follows a written schedule instead of one with pictures (Tr. at 74-75, 78). She also testified that when Deena first came to McCarton she was using Pictorial Exchange Communication System ("PECS") as her way of communicating. Dr. Feldman testified that Deena is speaking more and not relying so much on the PECS system (Tr. at 77). Dr. Feldman testified that Deena is now able to read when she couldn't last year (Tr. at 78).

Dr. Feldman opined that if Deena were in a 6:1:1 setting she would engage in disruptive and aggressive behaviors. Dr. Feldman opined that Deena required an extended day program because she requires structure and her maladaptive behaviors

Case No.  102140

increase even when she returns to school over the weekend (Tr. at 81) and that the
TEACH program would not address all of Deena's issues (Tr. at 84).  Dr. Feldman
testified that they used components of the TEACH program (Tr. at 99).  She opined that
Deena needs a program which is data driven (Tr. at 100).

Dr. Feldman stated that the McCarton School is an appropriate placement and that
Deena continue in the one-to-one program and receive an intensive home therapy
program (Tr. at 87-88).

On cross-examination Dr. Feldman testified that the school does not require its
teachers to be certified in special education, but Deena's class, which includes five
children, has four teachers and a speech therapist trained in behavior intervention (Tr. at
85, 91-92).

Shreya Patel, ABA supervisor at the McCarton Center, testified that she has been
Deena's home to school supervisor for 1 ½ years (Tr. at 119-120).  She testified that she
is supervised by Dr. Feldman and consults her regarding Deena's behavioral plans.  Ms.
Patel testified further that she supervises the home team and coordinates team meetings to
ensure that the team members are working on the same goals along with the parents and
siblings (Tr. at 121).

Ms. Patel testified that she attended the May 2005 CSE meeting, and remembered
discussing Deena's tantrumming behavior, but not any goals or objectives (Tr. at 122-
123).

She also testified that the ABA program addresses some reading and writing
goals, along with social and pragmatic skills (Tr. at 126, 132).  She testified that Deena
has made some gains in reading and math, a reduction in tantrumming, and her aggressive
behavior (Tr. at 126).

Ms. Patel testified that any skills Deena learns in school are carried over to the
home in order to help her generalize those skills (Tr. at 127).  She opined that the
program at the McCarton School and the afterschool services are appropriate for Deena
(Tr. at 134).

On cross-examination Ms. Patel testified that at the May 2005 CSE meeting there
was no discussion regarding assistive technology, and that the team asked general

Case No.  102140

---

questions about how Deena was doing in the McCarton program (Tr. at 137).  She testified that she did not have an opportunity to raise any issues she had with the IEP (Tr. at 138), but that she did mention Deena's self aggressive behavior, and tantrumming (Tr. at 140).

Marva Peart, head classroom teacher at the McCarton School, testified that the students in Deena's class are functioning at various levels (Tr. at 144).  Ms. Peart testified that during class time the students transition from one teacher to the next for generalization purposes (Tr. at 156).

Ms. Peart also testified that they've implemented a program which addresses visual performance, receptive and expressive instruction, math, reading, conversation and handwriting (Tr. at 147).

She testified further that last year Deena used visual aides instead of verbalizing, and that her receptive identification has improved along with her ability to make spontaneous requests (Tr. at 148-149).

She opined that if Deena did not have a home program she would regress at school (Tr. at 162), and that Deena needed the one to one instruction in the highly structured setting offered at the McCarton School (Tr. at 163).

On cross-examination, Ms. Peart testified that Deena used PECS last year, but would regress if she started using it for communication since she no longer needs it (Tr. at 66).

Leslie Weinberg, occupation therapist, testified that she has worked with children on the autism spectrum for seven years (Tr. at 171).  She testified that she works with Deena two times a week, 45 minutes per session.  She stated that Deena displays sensory integration difficulties, exhibits non-purposeful movements, and is highly distractible (Tr. at 173).

Ms. Weinberg also testified that she is working with Deena on improving her fine motor skills, specifically, manipulating fasteners, dressing and undressing, and handwriting (Tr. at 175).

On cross-examination Ms. Weinberg recommended that Deena have occupational therapy seven days per week (Tr. at 182).

Case No.  102140

Laura Prestia, a speech pathologist at the McCarton School, testified that she holds a masters degree in speech and language pathology, and that she works with Deena five (5) days a week, one hour per session.  She testified further that she conducts speech therapy sessions on a rotating basis with the students in the classroom (Tr. at 185).

Ms. Prestia testified that Deena has deficits in all areas of language, receptive and expressive.  She also testified that she is currently working with Deena on language tasks; improving her expressive vocabulary, articulation and oral motor skills.

She testified that Deena has made gains in her vocabulary, receptively and expressively, for example, she learns new words easily and uses them appropriately (Tr. at 186).  She testified that she is also working to help Deena form questions by using visuals with prompting (Tr. at 187).

Ms. Prestia recommended speech therapy five (5) times a week in school and three (3) times a week outside of school because Deena learns quickly, but regresses if the therapy isn't maintained everyday (Tr. at 188).

On cross-examination Ms. Prestia testified that she addresses pragmatic language skills by having Deena interact with one or two peers once a day for 10-15 minutes (Tr. at 191-192).

Jacob C., Deena's father, testified that during Deena's earlier years she would tantrum non-stop from morning to night and that she would scream when he entered the room until she reached age 4 ½ (Tr. at 196).

He testified that he attended the May 18th IEP meeting and was handed an IEP which already included goals and objectives which was then read to him.  He testified that he was told that they could only offer Deena a 6:1:1 program (Tr. at 197-198).

Jacob C. testified that he provided the team with copies of the McCarton IEP, and when he asked how they were going to handle Deena's behaviors, he was told that that was something the teachers at the school would address (Tr. at 198).

Mr. C. also testified that Deena has done exceptionally well, in that, her tantrums have become less self-destructive and her speech is more intelligible (Tr. at 200-201).

Case No.  102140

Mr. C. testified further that he received a placement recommendation from the DOE on August 27th which was dated August 8th (Tr. at 205). On cross-examination he stated that he was given an opportunity to ask questions at the IEP meeting (Tr. at 207).

Bonnie C., Deena's mother, testified that she received a letter after the CSE meeting in late August, and that when she called the CSE no one ever answered the phone. She left several messages (Tr. at 208-209).

She also testified that Deena is able to communicate, and that she needs the home program in order to know how to address new issues (Tr. at 212).

## DEPARTMENT OF EDUCATION'S CASE

Ms. Naqvi presented Camilla Swift, head teacher, at P.S. 226. Ms. Swift testified that P.S. 226 is a specialized school which services children with autism, mental retardation, and emotional disturbance (Tr. at 21).

Ms. Swift testified that the school utilizes several methodologies such as, the Mayor Johnson Picture Symbols, reading milestones and picture symbols (Tr. at 22). Ms. Swift also testified that the school uses the TEACH method which is a direct approach in which students with similar needs work together in one center, and other centers addressing students with different needs (Tr. at 27) Each student is given a functional behavioral assessment (Tr. at 27).

Ms. Swift testified that the children's ages range from kindergarten to 4th grade with varying levels of ability from 6 months (Tr. at 23).

Ms. Swift opined that Deena can function in a 6:1:1 classroom at P.S. 226 (Tr. at 23-24), and the teachers are NYS certified in special education and receive professional development training as well (Tr. at 29-30).

On cross-examination Ms. Swift stated that no one from her school attended Deena's IEP meeting (Tr. at 31).

Dr. Dewey Aleem, psychologist, Region 9, testified that on March 22, 2005, he conducted a psychological evaluation of Deena, and as part of his assessment, he interviewed the teachers, directors, and assistant director at the McCarton School (Tr. at 42). He also testified that one of the teachers informed him that Deena was displaying tantrums less frequently, and displays self-stimulating behavior (Tr. at 42). Dr. Aleem

Case No.  102140

testified that in talking with the staff at McCarton no one indicated that Deena exhibited any bizarre, aggressive or inappropriate behavior, other than tantrumming (Tr. at 43, 47).

Dr. Aleem's testified further, that during his interview of the Dr. Feldman, the assistant director, she indicated that Deena showed she was able to read words.

Dr. Aleem testified that he administered a battery of tests and found that Deena had difficulty with receptive and expressive language skills, which required that he modify certain tests, specifically the WIAT Wechsler Individual Achievement Test, 2nd Ed. as well as the Person Intelligent Test for Children, Adolescents and Adults (Tr. at 43-44). He testified that he modified the testing because Deena had difficulty with comprehension, language comprehension, following instructions, and questions posed to her (Tr. at 44). Dr. Aleem also testified that he asked the teacher to participate in the testing to help elicit the appropriate responses from Deena (Tr. at 44).

Dr. Aleem's testified that during his classroom observation of Deena she did not exhibit any alarming behavior; she interacted with prompting; engaged in games with prompting, and displayed reciprocity in her social interaction with peers (Tr. at 45).

Dr. Aleem testified that the CSE team considered the teacher's input, progress report, the educational progress report and the parents' input. He further testified that the CSE determined that Deena needed a special class in a specialized school which would provide her with instructional services, intensive remediation in academic skills, intensive remediation in language skill development, social interaction and related services (Tr. at 49).

Dr. Aleem testified that Lois Seiger, is a certified special education teacher employed by the DOE who signed the IEP as the district representative (Tr. at 49). Dr. Aleem testified that the CSE team developed the goals from progress reports developed by the McCarton School, occupational therapy reports, and speech and language progress reports (Tr. at 50).

Dr. Aleem testified that the Team did not come to the meeting with a completely written IEP, but the goals and objectives along with the present level of performance were developed, in order to discuss them with the parent if they had questions or comments (Tr. at 52, 62-63).

Case No. 102140

_____

Dr. Aleem also testified that Deena's parents did not have any concerns regarding the CSE team's failure to recommend assistive technology nor was the need for it mentioned in the speech therapy providers' progress report (Tr. at 54).

Dr. Aleem testified that the Team did not recommend ABA services because they believed the recommended program would address her behavioral issues, and any academic delays (Tr. at 56).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

I find that the parent has satisfied her burden to prove that the DOE's recommended placement and program are not appropriate.

The United States Supreme Court recently held that the burden of proof in a due process hearing is on the party challenging the IEP, Weast v. Schaffer, 126 S. Ct. 528 (2005).

In determining whether a FAPE has been provided, inquiry must be made as to whether the procedures set forth in the IDEA have been adequately complied with, and whether the DOE's recommended program is reasonably calculated to allow the child to receive educational benefits (Board of Education of Hendrick Hudson CSD v. Rowley, 458 U.S. 176 [1982]), and the recommended program is the least restrictive environment for the child (34 C.F.R. Section 300.550[b]; 8 NYCRR Section 200.6[a][1]).[1]

In matters alleging a procedural violation as the basis for the denial of a FAPE it must be shown that the procedural deficiencies impeded the child's right to FAPE, significantly impeded the parents' opportunity to participate in the decision-making process or caused a deprivation of educational benefits Sec. 65(f)(3)(E)(i) (ii).

An appropriate program begins with an IEP, which accurately reflects the results of evaluations to identify the child's needs, establishes annual goals and short-term instructional objectives which are related to the child's educational deficits and provides for the use of appropriate special education services to address the child's special education needs (Application of a Child with a Disability, Appeal No. 93-12; Application of a Child with a Disability, Appeal No. 93-9).

_____

[1] All citations to 34 C.F.R. herein refer to Part 34 of the Code of /Federal Regulations, and all citations to 8 NYCRR herein refer to Part 200 of the Regulations of the Commissioner on Education.

Case No.  102140

_____

I find that the CSE significantly impeded Deena's parents the opportunity to participate in the decision making process when they developed Deena's IEP goals and objectives along with the present level of performance prior to the IEP meeting (Tr. 52, 62-63).  Accordingly, I find that the DOE denied Deena a FAPE.

The DOE may be required to pay for educational services obtained for a child by the child's parents, if the services selected by the Department of Education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (School Committee of the Town of Burlington v. Department of Education Mass., 471 U.S. 359 [1985]).  The failure of a parent to select a program known to be approved by the state in favor of an unapproved option is not a bar to reimbursement (Florence County School Dist. Four v. Carter, 510 U.S. 7 [1993]).

The petitioner has shown that the DOE has not has offered Deena an appropriate program.

The second criterion for an award of tuition reimbursement is whether the parent's placement is appropriate.  Based on the evidence presented, it appears that the McCarton School is conferring upon Deena an educational benefit in that she is now able to read, verbalizes more and tantrums less frequently during her attendance there.

In regard to the parents' request for home based ABA therapy, I find that evidence presented of Deena's severe autism, language and physical needs, supports the need for home based therapy.  Several service providers of the home therapy, testified that Deena has benefited from these services, in that she has made significant gains, and the home therapy helps prevent regression and helps her to generalize skills learned at school.

The DOE provided no evidence to dispute that Deena needs could be addressed solely at school.

The final criterion for an award of tuition reimbursement is whether equitable considerations support the parent's claim.  There was no evidence in the record that the parent was uncooperative or failed to inform the DOE of her intent to place Deena in the McCarton School.  I find the parent's claim is supported by equitable considerations as to

Case No.  102140

_____

tuition reimbursement and ABA home therapy, and the <u>Burlington/Carter</u> prerequisites
are satisfied.

For the foregoing reasons, it is:

ORDERED, the Department of Education shall reimburse the parents for the
2005-2006 tuition and costs no later than 30 days from presentation of proof of payment;

ORDERED, the Department of Education shall reimburse the parents for the 25
hours of home based ABA therapy no later than 30 days from presentation of proof of
payment;

ORDERED, the Department of Education shall reimburse the parents for two (2)
hours per week of extended day speech therapy services, and two (2) hours per week of
occupational therapy no later than 30 days from presentation of proof of payment;

ORDERED, the reimbursement period is from September 1, 2005 through August
2006.

SO ORDERED.

Dated:  April 20, 2006


_____
VERONICA C. ODOM, ESQ.
Impartial Hearing Officer

VCO:jm



**PLEASE SEE FOLLOWING PAGE FOR APPEAL NOTICE**

Case No.  102140

_____

**<u>PLEASE TAKE NOTICE</u>**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: **www.sro.nysed.gov/appeals.htm.**

Hearing Officer's Findings of Fact and Decision                                    14

Case No.  102140

_____

## DOCUMENTATION ENTERED INTO RECORD FEBRUARY 27, 2006

A.    Demand for Due Process, 9/22/05                    Parent

B.    Cancelled Check, Tuition Payment for the           Parent
      McCarton School, 7/22/05

C.    Occupational Therapy, IEP Goals, 7/5/05            Parent

D.    Semi -Annual Medicaid Service Coordination        Parent
      Individual Service Plan, 7/1/05

E.    Occupational Therapy Evaluation, by Tracey Fisher, Parent
      6/23/05

F.    Speech and Language Department, Alyssa Rotolo,     Parent
      6/13/05

G.    New York City Board of Education IEP, 5/18/05      Parent

H.    Medical Report for Determination of Disability,   Parent
      2/9/05

I.    Periodic Exam Follow-Up Record, 1/19/05           Parent

J.    Medicaid Service Coordination Basic Agreement,     Parent
      1/1/05

K.    Annual Medicaid Service, 1/1/05                    Parent

L.    Speech and Language Goals from Alyssa Rotolo,      Parent
      9/05

M.    IEP for the McCarton School, 2005-2006            Parent

N.    In-Home Residential Habitation Plan of Care,       Parent
      Rahida Ramirez and Chrissy Powers, 1/1/05

O.    Occupational Therapy IEP Goals, 8/4/04            Parent

P.    Hearing Officer's Findings of Fact and Decision,  Parent
      Alison Berry, Esq., 4/1/04

Case No.  102140

| | | |
|---|---|---|
| Q. | Speech and Language Goals for the McCarton School, Alyssa Goss, Clinician, 2004-2005 | Parent |
| R. | Letter to Chairperson for Parents | Parent |
| S. | Schedule for the McCarton School | Parent |
| T. | Educational Progress Report, 11/18/05 | Parent |
| U. | Break-Down of Provider's Affidavits, Invoices and Cancelled Checks, 6/05 | Parent |
| V. | Break-Down of Provider's Affidavits, Invoices and Cancelled Checks, 7/05 – 8/05 | Parent |
| W. | Break-Down of Provider's Affidavits, Invoices and Cancelled Checks, 9/05 - 1/06 | Parent |
| X. | Provider's Affidavit, Dr. Cecilia McCarton, 6/05, 1/06, 2/06 | Parent |
| Y. | Parent Affirmed Verification of Provider's Affidavits, 2/10/06 | Parent |
| Z. | The McCarton School Tuition Affidavit, 5/06, and Cancelled Check, 2/06 | Parent |
| AA. | Enrollment Contract and Attendance Records, 2005-2006 | Parent |
| BB. | Occupational Therapy, Progress Report, Leslie Whiteberg and Tracey Fisher, 1/12/06 | Parent |
| CC. | Speech and Language Department Progress Report, by Laura Prestia, 1/06 | Parent |
| DD. | Request for Physical Examination, 2005 | Parent |
| 1. | IEP, 5/18/05 | Department of Education |
| 2. | IEP, 6/21/04 | Department of Education |
| 3. | Psychological Evaluation, 3/22/05 | Department of Education |

Case No.  102140

_____

4.      Observation, 2/3/05                              Department of Education

5.      Final Notice of Recommendation, 8/8/05          Department of Education

6.      Class Profile                                    Department of Education

7.      Annual School Report, 2003-2004                  Department of Education

8.      Contact Sheet                                    Department of Education

9.      Evidence of Correspondence to Mayerson,          Department of Education
        2/17/06

1

Cover Sheet

Finding of Fact and Decision

Deena Chachkes

DOB: 8/13/99

District 2

Request by Attorney

Date(s) of Hearing: 10/25/06; 1/02/06; 2/20/07; 3/08/07;
                    4/24/07; 6/04/07; 6/15/07

IHO: Robert Briglio

Date: July 26, 2007

Hearing Officer's Finding of Fact and Decision

Case No. 106297

Introduction

    This hearing was requested pursuant to the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §1415[f]) on August 31 2006, by Christina D. Thivierge, Esq. of Mayerson & Associates, attorney for the family of student, Deena C.  The hearing was requested because the parents disagreed with the recommendations of the New York City Department of Education (DOE) for the student for the 2006/07 school year.  The parents are seeking tuition reimbursement for the student to attend the McCarton School and receive the additional services of 1:1 Applied Behavioral Analysis (ABA) therapy, speech and language therapy, and occupational therapy during the 2006/07 school year. Exhibit A

    I was appointed to hear the matter by the DOE Impartial Hearing Office on September 1, 2006.  The hearing commenced on October 25, 2006 to determine pendency (20 U.S.C. §1415[j]; New York Education Law §4404[4]).

    A pendency order was issued on October 26, 2007 requiring the DOE to fund Deena's attendance at the McCarton School during the 2006/07 school year and the receipt of 25 hours per week of home-based services, including two one hour sessions of speech and language therapy per week, and two one hour sessions of occupational

therapy per week during the pendency of this matter.        The
hearing continued on January 2, 2007, February 20, 2007, March 8,
2007, April 24, 2007, June 4, 2007, and June 15, 2007.1  Appended to
the record are lists of the persons in attendance and the documents
received in evidence at the hearing.

Background

     Deena C. is seven years old.   She is diagnosed as having
autism.   She was placed by her parents at the McCarton School where
she has been receiving special education services for the last
several years.

     The McCarton School utilizes a 1:1 student/staff classroom
model and Applied Behavioral Analysis (ABA) as a teaching strategy
to address the academic, behavioral, and social/emotional needs of
the students with autism.   Classes are composed of approximately
five students, a head teacher, two ABA therapists, speech, and
occupational therapists.   Speech and language therapy is provided
daily for one hour to each student individually and occupational
therapy is also provided each day individually to the students. See
Tr. 254-265;329-330

     Deena also receives special education services outside of the
regular school day. She receives additional speech and occupational
therapy and 20-25 hours per week of ABA therapy at home. Exhibit A;
Tr. 466-467

---

1 Submissions were received and the record closed on July 16, 2007.  At the

A number of reports and evaluations were obtained by the DOE Committee on Special Education (CSE) in preparation for making an Individualized Education Program (IEP) recommendation for Deena for the 2006/07 school year. Included were a March 22, 2005 Psychological Evaluation (Exhibit 2), March 3, 2006 Observation (Exhibit 3), December 9, 2005 Observation (Exhibit 4), March 3, 2006 Functional Behavioral Assessment (FBA) (Exhibit 5), August 28, 2002, and Speech and Language Evaluation (Exhibit 7).

On May 26, 2006, the CSE met and recommended that Deena be classified Autistic and recommended for a special class, special school program2 with related services including occupational therapy, two times per week, 60 minutes a session provided 1:1, and speech and language therapy, two times per week for 60 minutes a session provided 1:1. (Exhibit 1) The DOE issued a Final Notice of Recommendation (FNR), dated July 14, 2006, recommending that Deena's IEP be implemented at P.811 at P.194 (P.811/194). Exhibit K

The impartial hearing request in this matter (Exhibit A) seeks tuition reimbursement for the special education program provided by the McCarton School and an extended day (home-based) program consisting of 20-25 hours of ABA therapy (Tr.466-467) and two sixty minute periods per week each of speech and occupational therapy.

---

request of the parties, extensions of time for a decision were granted pursuant to State regulations (8 N.Y.C.R.R. §200.5[i][3]) until July 30, 2007. 2 DOE special class, special school programs are known as "District 75" programs.

## Position of the Parties

### DOE's Position

The DOE contends that the May 26, 2006 IEP providing for a special class (6:1:1), special school program in District 75 with related services provided at P.811/194 offered Deena a free, appropriate, public education (FAPE). Tuition reimbursement for the privately obtained services should, accordingly, be denied pursuant to the standard established in *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985) and *Florence County School District v. Carter*, *supra*, 510 U.S. 7 (1993).

The DOE contends that the May 26, 2006 IEP was the result of a timely meeting of a duly constituted CSE. The fact the placement recommendation for P.381/194 was received by the parents on July 21, 2006 after the start of the extended school year on July 1, is of no consequence because the DOE was funding the student's summer placement at the McCarton School pursuant to a previous impartial hearing order, and the parents had no intention of visiting the public school placement in any event. Thus, any procedural errors which may have been committed regarding the timeliness of the DOE recommendation for Deena did not cause a loss of educational opportunity or deprive the parents of meaningful participation in the IEP process so as to cause a denial of FAPE.

The CSE psychologist, Dr. Aleem, performed an appropriate observation and Functional Behavioral Assessment (FBA) of the

student at the McCarton School to assist the CSE to make
appropriate recommendations. The 6:1:1 class was appropriate to
meet the student's needs, and there was no need for extended day
services. If additional services were needed, the school
(P.381/194) would evaluate and amend the IEP if necessary. Parent
training was not included on the IEP because this service is
programmatic in the District 75 placement at P.381/194.

The DOE contends that 6:1:1 special class, special school
recommendation for Deena at P.381/194 was substantively appropriate
and reasonably calculated to provide the student with educational
benefit. The teacher, Ms. Finkel, is qualified, trained in
behavior modification, assisted by an autism coach, and employs a
behavior plan in the class. There is a strong component of parent
participation in the 6:1:1 class at P.381/194. Related services
recommended on the May 26, 2006 IEP were also appropriate.

The DOE contends that Deena made progress at the McCarton
School during the 2005/06 school year, and a classroom observation
performed by the DOE CSE representative indicated that Deena was
functioning appropriately in class and following teacher
directives.

Because the DOE recommendation for Deena for the 2006/07
school year was appropriate, tuition reimbursement should be
denied.

The DOE contends that the parents failed to satisfy their

burden of demonstrating the appropriateness of the special education services they obtained for Deena for the 2006/07 school year. A lack of communication between teachers and related service providers and the failure of staff at the McCarton School to consider a privately obtained Autism evaluation (Exhibit D) are pointed out as examples of the program's inadequacy.

The DOE contends that the extensiveness of the home program the parents obtained for Deena in the 2006/07 school year is inappropriate. The director of the home program, Jennifer Cross, is unqualified to supervise the other therapists and no evidence of the qualifications of the other ABA therapists was offered. Services provided to Deena in the morning are unrelated to her academics and inappropriate. Trips to the community are also not educationally related. The claim that the services are needed to prevent regression is self-serving according to the DOE. It is also claimed that there is inadequate communication between the McCarton School and providers of home-based services to promote generalization as intended.

With respect to equitable considerations, the DOE claims the parents acted in bad faith by not informing the DOE that they were rejecting the DOE program and placement recommendation at P.381/194 until they requested this hearing in August, 2006. The parents also failed to visit the placement that was offered despite having sufficient information to do so. Accordingly, reimbursement should

be denied or limited.

See DOE Closing Brief and Memorandum of Law (DOE Brief)

<u>Parents' Position</u>

The parents contend that the DOE failed to offer Deena FAPE on both procedural and substantive grounds by: failing to properly assess the student's needs through an appropriate observation and psychological evaluation; failing to consider the parents' request for a 1:1 ABA center-based school; failing to offer a timely placement; failing to offer Deena an individualized special education program tailored to her needs and offering a standardized autistic program routinely provided autistic children in New York City instead; failing to adequately assess the student's needs including behavioral functioning and need for 1:1 support; improperly conducting a FBA; failing to recommend a home component to the student's IEP; failing to offer a transition plan for a recommendation to a less restrictive (6:1:1) setting; failing to develop appropriate and measurable goals and objectives at the IEP meeting with parent input; failing to provide Deena's parents with parent training and counseling as required by Commissioner's regulations.

It is claimed that the privately obtained special education services that the parents provided Deena during the 2006/07 school year, including the twelve month program at the McCarton School, 20-25 hours per week home-based ABA therapy and two hours per week

9

each of occupational therapy and speech therapy, satisfy the legal standard for appropriate services reimbursable under the IDEA.

Deena benefits academically, social-emotionally, and behaviorally at the McCarton School from the 1:1 instruction using ABA therapy as well daily hour periods of occupational and speech therapy. Deena is improving in all areas according to staff at the school.

The home component of Deena's special education program provided by her parents is needed to enable Deena to generalize the information she learns in school and improve her functioning in the community. Home to school coordination ensures behavior plans for the student are consistent. Without the home component to Deena's program, she would regress. Deena also is able to practice daily living skills.

With respect to equitable considerations, the parents acted reasonably with the DOE at all times and there are no compelling equitable considerations that would preclude or diminish a reimbursement award.

See Parents' Post-Hearing Memorandum

## Findings of Fact and Conclusions of Law

### Legal Framework and Standard

The IDEA mandates that participating States provide students with disabilities FAPE. FAPE requires special education and related services tailored to meet the unique needs of a particular student

and reasonably calculated to enable a student to receive educational benefits. *Board of Education v. Rowley*, 102 S.Ct. 3034, 3037-38 (1982) Moreover, the law expresses a strong preference for students to be educated to the maximum extent appropriate with non-disabled peers and requires that students be segregated only when the nature or severity of the disability is such that education in regular classes cannot be achieved satisfactorily. *Walczak v. Florida Union Free School District,* 142 F.3d 119 (2d Cir. 1998)

The particular educational needs of a student with a disability and the services required to meet the needs must be set forth annually in a written IEP which states present levels of performance, annual goals, specific services to meet those goals, the extent to which the student will participate in regular education, transition services needed for when a student leaves a school setting, the initiation date and duration of services, and objective criteria for determining whether goals and objectives are being achieved. *Walczak*, *supra* at 122 *citing* 20 U.S.C. §1401(a)(20)

Parents play a significant role in the IEP process. They must be informed about and consent to evaluations and have the right to an independent educational evaluation of their child. They are members of the IEP team. (*Schaffer v. Weast,* 126 S.Ct. 528,532 [2005]) Moreover, parent's participation at IEP meetings must be "meaningful". (*Deal v. Hamilton County Board of Education,* 392

F.3d. 840,853 (6th Cir. 2005)  Parents must also be given prior written notice of any changes to the IEP and notice of procedural safeguards, including the right to an impartial due process hearing. *Schaffer, supra* 126 S.Ct. at 532

Adequate compliance with the procedures prescribed by the IDEA will in most cases satisfy what is required substantively in an IEP. *Schaffer, supra* 126 S.Ct. at 532 *citing Rowley* at 206; *M.S. v. Board of Education of the City School District of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000)

The Court in *Schaffer* took particular note of the reliance placed in the IDEA on the expertise of school district personnel to satisfy the law's goals in holding that an IEP challenged by parents at a due process hearing must be presumed to be valid and that the parents bear the burden of persuasion with respect to demonstrating the inappropriateness of the recommendation. *Schaffer, Id* at 536-7

With respect to a determination of the appropriateness of a school district IEP recommendation, Congress now requires that a hearing officer render a decision on substantive grounds based on a determination of whether the child received a FAPE. Where a procedural violation is alleged, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decision making process

12

regarding the provision of FAPE, or caused a deprivation of educational benefits. 20 U.S.C. §1415 (f)(2)(E)

The legal standard to be applied to a parental request for reimbursement from a board of education for special education services obtained privately by parents of a child with a disability is set forth by the U.S. Supreme Court cases regarding tuition reimbursement for private school placements. If the services offered by the board of education are inadequate or inappropriate, the services selected by the parent are appropriate, and equitable considerations support the parent's claim, reimbursement should be granted. *School Committee of the Town of Burlington v. Department of Education, Massachusetts, supra*, 471 U.S. 359 (1985); see also, *Florence County School District v. Carter, supra*, 510 U.S. 7 (1993).

Reimbursement sought for a private placement must be reasonable. (See *Carter, supra*, 510 U.S. 7 at 16) The parents bear the burden of proof with respect to the reasonableness of the services they obtain for their child. See *Schaffer, supra*, at 536-7

Appropriateness of the May 26, 2006 IEP

Procedural Issues

I find that the DOE and its CSE failed to follow procedural mandates in developing the May 26, 2006 IEP for Deena in a number of ways. I find that the Deena was not evaluated appropriately in all areas of need; the student's IEP was not based on then current

educational progress and achievement of the student; appropriate goals and objectives were not formulated on the IEP; the IEP failed to provide for transitional support services and parent training; and, a placement site for Deena was not considered at a CSE meeting.

I find that that the CSE failure to properly evaluate Deena, ensure that the student's IEP was based on the educational progress and achievement of the student, develop appropriate goals, and provide for transitional support services and parent training on the IEP deprived the student of educational opportunity and the parents of meaningful participation such that Deena was denied FAPE. I decline to find a deprivation of FAPE or failure to provide the parents with a meaningful opportunity to participate in making recommendations for the student with respect to appropriately recommending a placement.

I agree with parents that the failure of the CSE to evaluate Deena in all areas of need by failing to perform an appropriate FBA deprived Deena of FAPE.

A FBA is required for any student having an educational disability whose behavior impedes his or her learning or that of others. (See 8 N.Y.C.R.R. §§200.4[b][1][v] & 200.4[b][4])

Deena's inappropriate perseverative behaviors (jumping, clapping hands, repeat questioning), varying attention, poor eye contact, and impulsivity stemming from her autism have and continue

to be central issues in her education.  (See Exhibits P-1; M-1; D-3; Tr. 534; 334-335)  These behaviors should have been targeted on the FBA conducted by the CSE in addition to the more extreme behaviors of biting, kicking, and darting which were targeted (Exhibit 5) because they clearly impacted on the student's ability to learn and so need to be minimized through an appropriate BIP.

Accordingly, I find the failure to conduct a thorough FBA for Deena to be a substantial omission which precluded the determination of an appropriate IEP and denied the student FAPE for the 2006/07 school year.  See *M.C. v. Board of Education of the Chappaqua C.S.D.,* 2007 WL 1259145 (S.D.N.Y.), holding that the failure to conduct a FBA for a student that had poor attention, lack of focus, and "fantasy episodes" constituted a denial of FAPE.

It is also significant that the CSE appears not to have obtained reports from the McCarton School and home-based program to measure Deena's academic, developmental, and functional needs and educational progress and achievement as expressed in the school and home instruction settings.  No progress reports from the McCarton School or home-based providers from the 2005/06 school year were a part of the record in this case.  Moreover, Dr. Aleem, the CSE psychologist, made no mention of specific reports from the McCarton School or home ABA providers that the CSE considered in making the May 26, 2006 IEP recommendation.  Rather, it appears the DOE members of the CSE relied chiefly on the FBA by Dr. Aleem (Exhibit

5), Observations of the student (Exhibits 3&4), and previous Psychological Evaluation (Exhibit 2) in developing the May 26, 2006 IEP.  See Tr.25-44

I find that the failure to have considered Deena's academic, developmental and functional needs and educational progress and achievement through current information from the student's school and home-based providers impeded the child's right to a FAPE and caused a deprivation of educational benefits.  See 8 N.Y.C.R.R. §200.4(f)(1)(v)&(vi); 20 U.S.C. §1415 (f)(2)(E)

I agree with the parents that the development of goals without direct input from the parents and McCarton School staff (Tr. 168-172) deprived the parents and CSE members other than the DOE representatives of the opportunity to participate appropriately in the formulation of goals and objectives and to weigh in on the description of the student's needs.  Moreover, the goals for Deena developed at the McCarton School are far more comprehensive than those placed on the student's IEP, a number of which refer to "he" and clearly did not originate with Deena.  (See and compare Exhibit 1-6-10 & Exhibit E)  In particular the omission of goals for daily living skills (Tr.175-176) is inappropriate given the student's "extremely low" functioning in this area.  (See Exhibit 2-6) Clearly, the CSE would have benefited by developing goals and objectives for Deena directly in conjunction with staff from the McCarton School and the parents.

I also find that the June 12, 2006 IEP was improperly developed because there was no provision for transitional support services to aid Deena's transition to a less restrictive setting (8 N.Y.C.R.R. §200.1[ddd]) or for parent counseling and training to assist the parents to support the implementation of Deena's IEP. See 8 N.Y.C.R.R. §§200.13(d) & 200.1(kk)

I agree with the parents and reject the contention of the DOE that no discussion of parent training and counseling at an IEP meeting or reference to this service on the IEP is appropriate because the parent counseling and training are programmatically provided in the 6:1:1 District 75 program recommended. See Tr. 102

The Commissioners Regulations clearly reference the need for parent training and counseling to support, "…implementation of their child's individualized education program."  I find that the only appropriate place for such a discussion is at meeting where the IEP is developed and that specific reference to and description of that service must be provided on an IEP for an autistic child such as Deena. (See 34 C.F.R. §300.320[a][4]; 8 N.Y.C.R.R. §200.4[d][2][v])  Moreover, no evidence was presented at the hearing indicating that programmatic parent training at the recommended placement (P.811/194) is in any way individualized to support implementation of a particular student's (e.g. Deena's) IEP.

Parent training for an autistic student such as Deena is

particularly   important   given   her   significant   need   for
generalization and reinforcement at home, according to the Director
of the McCarton School, Ms. Feldman. (See Tr. 323-326)   Deena's
parents   also   need   constant   training   to   address   Deena's
perseverative behaviors and self-help skills in the home according
to Ms. Cross. (Tr.448)

Similarly, transitional support services should have been
considered and provided on the IEP to support Deena's transition
from a 1:1 ABA setting at McCarton to a 6:1:1 setting in a public
school.   The addition of a 1:1 trained ABA therapist on Deena's IEP
might very well have addressed the concerns of Deena's then current
providers that she receive services in a 1:1 setting.   Such a
recommendation   would   also   have   been   consistent   with   the
recommendation   in   the   Diagnostic   Evaluation   from   the   Autism
Division of the University of North Carolina (North Carolina Autism
Evaluation) that, if placed in a small (6/5:1:1) class, Deena
receive   two   to   three   hours   per   day   of   1:1   teaching   and   her
transition to a larger class be monitored carefully. See *infra*,
Exhibit D

Finally, I agree with the parents' contention that the failure
of the CSE to offer the parents an opportunity to review the
appropriateness of the DOE placement offer at a meeting with other
CSE team members present violates the IDEA.   However, I agree with
the DOE that the parents in this case were not interested in a

6:1:1 special class program believing Deena needed a more intensive 1:1 program. (See Tr. 717)   Accordingly, I do not find that the parents were not deprived a meaningful opportunity to participate in the development of a recommendation for Deena because a placement site was not reviewed at a CSE meeting.

Substantive Issues

    Substantively, I find that the May 26, 2006 IEP developed for Deena by the DOE CSE for the 2006/07 school year fails to offer the student FAPE.  The recommendation for a 6:1:1 class in a District 75 special school program was not based on an accurate assessment of the student's then current academic, social/emotional and behavior needs.  As indicated above, the CSE apparently failed to obtain current assessments of Deena's progress and achievement at the McCarton School during the 2005/06 school year and didn't rely on the opinions of staff from McCarton in determining whether Deena was capable of succeeding in a less restrictive setting.

    However, progress reports from the McCarton School made shortly after the May 26, 2006 IEP recommendation indicate that, while Deena had progressed significantly in all areas using individualized teaching, she continued to demonstrate delays impacting all areas including communication, social interaction, play, and adoptive behaviors, necessitating continued instruction in a 1:1 model. (Exhibit J)  Both speech therapy and occupational therapy were recommended by providers at the McCarton School in a

1:1 setting as well.  (Exhibits H&I)

The North Carolina Autism Evaluation obtained by the parents in October, 2006, does not support the 6:1:1 special class program and placement that the DOE recommended for Deena.  The Evaluation notes that Deena has progressed in a very intensive and individualized behavior program and suggests that Deena might benefit from a somewhat less intensive program (similar to the 6:1:1 offered by the DOE).  However, the Evaluation indicates that Deena will continue to need a highly structured and individualized program with at least two to three hours per day of individualized instruction.  (See Exhibit D-9)  The May 26, 2006 IEP recommendation for Deena makes no provision for this 1:1 instruction.

Input from staff at the McCarton School was also available to the CSE on May 26, 2006, indicating that Deena could not function in a 6:1:1 class and continued to need individualized instruction to succeed. Dr. Feldman testified at the hearing Deena lacked the attentional and behavioral controls required in such a setting and was likely to engage in perseverative behaviors.  The student's attention span was described as short, and her interfering behaviors required more than minimal adult prompting in the class. Tr.332&337

Finally, even the psychological report obtained in March, 2005, and apparently relied on by the CSE does not support a less

restrictive setting.   Rather, Deena scored on the Extremely Low range in Adaptive Behavior (1% or less), and the there is no indication how a less restrictive (6:1:1) setting could accommodate such a low level of skill in this area. See Exhibit 2-5-7

Accordingly, I find no basis in this record to support the DOE recommendation for a 6:1:1 special class program for Deena for the 2006/07 school year and find that Deena required more 1:1 assistance than such a setting provides to make meaningful progress. *Rowley, supra; Walzczak, supra*

Appropriateness of the Parents' Placement

It is the parents' burden to prove that the special education services they obtained for Deena for the 2006/07 school year are appropriate.  In order to meet this burden, the parents must show that the services were proper under the Individuals with Disabilities Education Act.  *School Committee of the Town of Burlington*, *supra*.  The appropriateness of the unilateral placement is determined by whether the placement is reasonably calculated to enable the child to receive educational benefits and likely to produce progress, not regression.  *Frank G. and Dianne G. v. Bd. Of Educ. Of Hyde Park*, 459 F3d 356 (2d Cir. 2006)

The requirement that children with disabilities be placed in the least restrictive environment applies to unilateral placements by parents.  *P.J. v. State of Connecticut*, 788 F.Supp. 673 (D. Conn. 1972) However, that requirement must be balanced against the

21

requirement that each child with a disability receive an appropriate education. *Briggs v. Bd. of Ed. of the State of Connecticut*, 882 F.2d 688 (2d Cir. 1989)  See also *Frank G., supra*, holding that a parents' unilateral placement will be reimbursable if reasonably calculated to address a deficit area even if the placement is not in the child's least restrictive environment.

I find that the services obtained for Deena by her parents satisfy the legal standard of appropriateness established for reimbursement of privately obtained services except to the limited extent indicated below.

That fact that the services obtained by the parents satisfy the standard set forth in *Frank G.* is demonstrated precisely for the same reasons that the DOE recommendation fails.  I find that the parents followed the reports and evaluations and opinions of Deena's special education providers in placing Deena at the McCarton School for the 2006/07 school year and continuing with a home-based ABA program.

Thus, Deena continued to receive specialized instruction using ABA methodology in a small classroom environment with a 1:1 student staff ratio at the McCarton School.  Both a progress report by the McCarton School and the North Carolina Autism Evaluation recommended that Deena receive a substantial amount of 1:1 instruction, differing only in the amount recommended.  See Exhibits J&D

The staffing level at the McCarton School permitted teachers and other providers to continuously address Deena's perseverative, disruptive, and inattentive behaviors when they occurred and maintain her focus through functional assessment and behavior plans. The 1:1 ABA therapy she received in school was ideally suited to address her autism by breaking tasks to simple components and reinforcing the steps required to learn a task.  Data collection permitted staff to accurately record Deena's progress toward her academic and behavior goals.  (See Tr. 254-262)  Both speech and occupational therapy were provided 1:1 on a daily basis at the McCarton School, which is appropriate for Deena. Tr.329-330; Exhibits H&I

The services selected by the parents for Deena for the 2006/07 school year were likely to result in the student's progress, and I find that significant progress, in fact, took place.  Thus, a Progress Report from February, 2007 from the McCarton School notes that Deena has made significant improvements in all areas during the 2006/07 school year.  For example, she acquired the ability: to use new words, to use full sentences, to use "wh" questions to obtain information, to better describe objects, to answer comprehension questions, and to better follow directions.  Her attention has improved, and she has begun participating in group lessons adopting well.  Deena also made significant progress attending to others around her and structuring play.  She is also

learning to initiate appropriate social interaction with peers. See Exhibit N3

Clearly, Deena is benefiting from the special education services she received at the McCarton School during the 2006/07 school year, and I find the services appropriate.

I also find that Deena required a home-based ABA program to make satisfactory progress meeting her special education needs in the 2006/07 school year.

The home program is set up to generalize skills from school to home, to address behaviors evident at home, and to prevent regression. Communication and cognition skills (reading, writing, comprehension, grammar, and math) are addressed as well as daily living skills (using the bathroom and eating appropriately, dressing, sitting properly, etc), and social and play skills, including reducing dangerous behaviors in the community  See Exhibit M

The provision of after school ABA therapy was supported by the North Carolina Autism Evaluation the parents obtained. The Evaluation recommends that independent skills be expanded across a variety of settings and people by creating incentives and opportunities for Deena to communicate.   Clearly, this recommendation supports instruction in the home as well as school

---

3 I do not agree with the DOE that the Progress Reports from the McCarton School in August, 2006 and February, 2007 (Exhibits J&N) are overly similar. The reports are less than six months apart and some overlap is clearly understandable. A careful reading of the reports indicates different areas of

environment.   See Exhibit D-10

There is also evidence that Deena made progress in the home-based program.

A Home Education Progress Report from February, 2007, indicates that Deena has been receiving home-based 1:1 ABA instruction and made extensive progress.  Disruptive behaviors at home such as tantruming, hitting, head banging, crying, and biting have significantly decreased through the use of a behavior plan and positive reinforcement.

According to the home program supervisor, Ms. Cross, Deena has made gains in daily living skills such as eating, sitting appropriately, and using the bathroom properly.  Skills are addressed in the community as well, such as standing on line appropriately at the store.  (Tr.422-424; 512-514)  Academically, the gains include improvements developing word skills, greeting people, requesting items, responding to comprehension questions, using prepositions, describing objects, understanding and using money (coins), among other areas.  Tr.405-418

Without the supportive therapy at home, Deena would regress according to the home-based provider, and inappropriate behaviors re-surface.  Tr. 448-449; 454-455

Contrary to the depiction of the record by the DOE, I find that there was more than sufficient communication between staff at

_____

progress made by the student.

the McCarton School and the home providers for Deena to generalize what she learns- learn similar tasks in different settings and from different instructors. Thus coordination existed between home and school through a common behavior plan. (Tr. 324) Ms. Swietek, the head teacher in Deena's class at McCarton communicated with the home providers (Tr.573). Deena's home program coordinator, Ms. Cross, met weekly with Ms. Swietek and emailed her with issues. (Tr. 395;-396;450;484) Ms. Cross met with the other therapists monthly and the parents whenever in the home. (Tr. 492)

The DOE contention that the home program selected by the parents provides an optimal, if not an excessive level of services, is a more difficult question.   For the most part, I disagree with this contention.

The DOE also contests the assertion Deena will regress absent home services as both a circular and self-serving claim by the parents and their private providers.  Finally the DOE challenges the appropriateness of non-academic home-based services conducted without ABA therapy and the appropriateness of home services by providers of unknown qualification.   (See DOE Post Hearing Memorandum at 11)  Here, I must agree with the DOE to some extent.

I find that the home-based ABA program described in the February 7, 2007 Home Program Progress Report and by Ms. Cross is appropriate and not optimal.  Moreover, the fact that Deena's home program addresses tasks not part of the school curriculum and in

the community does not per se demonstrate the inappropriateness of such instruction.    Clearly this instruction reinforces Deena's ability to learn generally and to reduce inattentive, perseverative, and inappropriate behaviors which undermine learning both at home and in school.

However, I agree with the DOE that there is inadequate evidence to support some of the home-based services for which the parents seek reimbursement.

Reimbursement for the private placement of a student with a disability by a parent pursuant to the IDEA is appropriate where the reimbursement sought is reasonable. (*Carter*, *supra*, 510 U.S. 7 at 16)    The parents bear the burden of proof with respect to the reasonableness of the services they obtain for their child. See *Schafer*, *supra*, at 536-7

First, I find that reimbursement for home-based services should be limited to no more than the 20 hour per week maximum (15-20, Tr.327) recommended by Dr. Feldman.    I find that, unlike Ms. Cross, Dr. Feldman has sufficient credentials and experience instructing autistic children as well as knowledge of Deena's needs to make an appropriate recommendation for an extended day, home-based ABA program for the student.

I find that the evidence presented at the hearing concerning the hourly morning services described as "self-help and adoptive living skills" provided by Lourdes does not support an award of

reimbursement. These services are not provided using ABA instruction, and no data describing the progress of these services is taken. (See Tr. 451-455) Moreover, there is no evidence that the services are instructional in any way. Accordingly, I find no basis for their reimbursement.

I also agree with the DOE that the provision of home-based ABA therapy to address the student's separation anxiety and acting out behaviors when the parents leave the home and attend recreational activities, such as going out to dinner, is inappropriate. First, a primary benefit of the home program is to educate parents regarding how the child learns and to teach the parents strategies to use at home on their own. (See 8 N.Y.C.R.R. §§200.13[d] & 200.1[kk]) Clearly, this isn't possible when both parents are out of the house during therapy. Second, the record reflects that Deena engages in more disruptive behaviors when the parents leave which requires considerable effort by the therapists to control and enable Deena to benefit from instruction. Obviously, the creation of a learning environment not conducive to the student obtaining benefit is inappropriate and should not be reimbursed.

No evidence was offered in support of the rate ($125.00 per hour) charged by the Ms. Cross who provides ABA therapy and supervises the other therapists. (See Exhibit V; Tr.459) Ms. Cross is not certified or licensed as a board approved ABA therapist or supervisor and has only a bachelor degree and employment experience

using ABA therapy. (See Tr.389-391;455-459) Accordingly, I decline to reimburse the family in excess of the rate the DOE customarily pays a licensed special education teacher or ABA consultant to provide at home ABA services for a student. Customarily in this case means the rate DOE actually pays on a routine basis in cases requesting reimbursement for privately obtained services, not necessarily the approved DOE rate.

Similarly, there is no evidence in the record regarding the credentials of the other two ABA therapists or what services they provide for the student other than testimony from Ms. Cross that they provide ABA therapy. Accordingly, I decline to reimburse the parents for those services in excess of the rate the DOE customarily pays an aide or paraprofessional trained in ABA therapy. Customarily again means actually pays for such privately obtained services.4

Finally, there is no evidence in the record regarding the appropriateness of the extended day speech and language therapy and occupational therapy services (two hours per week of each service) that the parents seek reimbursement for and which occur outside the McCarton School. See Exhibit A. Both the speech therapist and occupational therapist from the McCarton School testified only about the services they provided Deena at school during the 2006/07

_____

4 I strongly urge the parties to reach a prompt resolution of the rate of reimbursement to be paid the home-based ABA therapists in this matter. In the event resolution is not reached promptly, the parents may request that the hearing be re-opened and I am retaining jurisdiction to review this issue.

school year and the appropriateness of the services.  They also
provided reports supporting the testimony.  (See Exhibits O&T)
There is little or no evidence in the record supporting the request
for the provision of speech and occupational therapy outside of
school, and reimbursement is therefore denied.

In all other respects, I find that services obtained by
Deena's parents at the McCarton School and the home ABA program
satisfied the "appropriate" standard required by FAPE under federal
law.  See *Rawley*, *supra,* at 198-200; *Frank G., supra*

Equitable Considerations

I find no basis in this record to deny or limit reimbursement
to the parents for the special education services the parents
obtained privately for Deena for the 2006/07 school year, except to
the extent indicated above.  The claim that the reimbursement
should be denied or reduced because the parents failed to visit the
recommended school or further express dissatisfaction with the DOE
recommendation for Deena prior to the hearing request in August,
2006 is without merit. The parents justifiably rejected the 6:1:1
special class recommendation because the student's teachers and
other providers as well as reports advised them that Deena required
1:1 instruction in the class.  Clearly, the parents have the right
to reject an inappropriate recommendation of the CSE. Moreover, a
description of the class was never presented to the parents at an
IEP team meeting so they could appropriately evaluate the placement

recommendation.       Except to the extent described above with respect to the home ABA services, the DOE offered no evidence that the cost of the special education services obtained by Deena's parents was unreasonable.

Order

The DOE is ordered to reimburse the parents of Deena C. for the cost of the McCarton School tuition and home-based ABA therapy obtained by the parents for Deena during the 2006/07 school year to the extent indicated herein.

No reimbursement shall be provided for home-based non-ABA services conducted by Lourdes.

No reimbursement shall be provided for home-based ABA therapy conducted while both parents were not at home.

Reimbursement for ABA supervisor, Jessica Cross, shall not exceed the customary hourly rate the DOE reimburses for a special education teacher or ABA consultant providing home-based ABA therapy to a student.

Reimbursement for ABA therapists, Carolyn and Camilla, shall not exceed the customary hourly rate the DOE reimburses a paraprofessional or aide to provide home-based ABA therapy.

No reimbursement shall be provided for two hours per week each of after school speech and language therapy and occupational therapy during the 2006/07 school year.

Payment by the Department of Education shall be made upon

31

proper proof of payment by the parents.5

Proof of payment for the above is indicated by, but not limited to, copies of cancelled checks, money orders, credit card statements, bank statements, invoices, tuition services contracts, attendance or enrollment documents, and transportation logs. (See Exhibits U&V) All questions regarding reimbursement procedures should be directed to the Bureau of Contract Aid at 718 935-4789.

Dated: July 26, 2007


`

                                      ROBERT BRIGLIO, ESQ.
                                      Impartial Hearing Officer

_____

5 The parents shall provide the DOE with an account of the services not to be reimbursed to the extent possible from the data collected and records kept by the ABA providers and parents.

**WITNESS LIST**

October 25, 2006

For the Student
Christina Thivierge, Esq.

For the School District
Nilofer Naqvi, District Representative

January 2, 2007

For the Student
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father

For the School District
Nilofer Naqvi, District Representative
Dewey Aleem, School Psychologist
Clarence Youngs, assistant Principal
Joan Capuano, Special Ed. Teacher

February 20, 2007

For the Student
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father

For the School District

Nilofer Naqvi, District Representative

March 8, 2007

For the Student
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father
Dr. Ivy Feldman, McCarton School Director

For the School District
Nilofer Naqvi, District Representative
Allison Finkel, Special Education Teacher
Dewey Aleem, School Psychologist

April 24, 2007

For the Student
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father
Dr. Ivy Feldman, McCarton School Director
Jessica Cross, Home ABA Supervisor

For the School District
Nilofer Naqvi, District Representative

April 24, 2007

For the Student
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father

Dr. Ivy Feldman, McCarton School Director
Jessica Cross, Home ABA Supervisor


<u>For the School District</u>
Nilofer Naqvi, District Representative


<u>June 4, 2007</u>

<u>For the Student</u>
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father
Tara Swietek, Head Teacher, McCarton School
Nipa Bhandari, Occupational Therapist
Jessica Pangretic, Sppech Therapist=


<u>For the School District</u>
Nilofer Naqvi, District Representative


<u>June 15, 2007</u>

<u>For the Student</u>
Christina Thivierge, Esq.
Bonnie Chachkes, Mother
Jacob Chachkes, Father


<u>For the School District</u>
Nilofer Naqvi, District Representative

**EXHIBITS**

```
DOE:
Ex.  Date      Description              pg.
1    5/26/06   IEP                      14

2    3/22/05   Psychological Evaluation 10

3    3/03/06   Narrative Observation    2
4    12/09/05  Observation              2
5    3/03/06   Functional Behavioral Assmt. 3
6    undated   Variance Request Form    3
7    8/28/02   Speech and Language Eval. 4
8    5/01/04   Finding Fact & Decision  9
9    undated   2004/05 Annual School Report 3
10   12/06/06  CAP Form                 1
11   2006/07   School Comprehensive Plan 12
12   various   Therapists Notes         34

Parents:
A    8/31/06   Due Process Demand       5
B    4/20/07   Finding Fact & Decision  17
C    5/26/06   IEP                      13
D    10/12/06  Diagnostic Evaluation    20
E    06/07     McCarton School IEP      18
F    06/07     McCarton School Speech Goals 4
G    06/07     McCarton School OT Goals 2
H    7/07/06   McCarton OT Progress Report 5
I    7/06      McCarton Speech Progress Rpt. 2
J    8/13/06   McCarton Educ. Prog. Rpt. 4
K    7/14/06   DOE Program Change       2
L    undated   FBA Fact Sheet           3
M    2/10/07   Home Educ. Progress Rept. 4
N    2/02/07   Education Progress Report 4
O    1/09/07   OT Progress Report       4
P    1/01/07   Annual Medicaid Service Plan 29
Q    7/14/06   McCarton Contract 06/07  3
R    1/23/07   McCarton Affidavit Service 1
S    06/07     Attendance Record        1
T    undated   Work Product             8
U    06/07     Invoices Etc.            23
V    06/07     Invoices Etc.            212
```

```
-----------------------------------X
```

In the Matter of the Impartial
Hearing of

Deena C.                                            **NOTICE OF APPEAL RIGHT**
                                                    **TO STATE REVIEW OFFICER**

& the New York City
Department of Education

```
-----------------------------------X
```


**PLEASE TAKE NOTICE**

    Within 35 days of receipt of this decision, the parent and/or
board of education has a right to appeal the decision to the State
Review Officer of the New York State Education Department under
Section 4404 of the Education Law and the Individuals with
Disabilities Education Act.  Failure to file the notice of intention
to seek review is a waiver of the right to appeal this decision.

    Directions and forms for filing an appeal can be obtained from
the local school district or State Education Department and can also
be found in the Office of State Review website:
www.sro.nysed.gov/appeals.htm.